IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUIS ROSA,** | : | Civil No. 1:19-CV-1452 |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA,** | : : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION

### I.   Factual Background

This case, which comes before us for consideration of a motion to compel, (Doc. 38), is an employment discrimination lawsuit brought by Luis Rosa, a former official in the Pennsylvania Board of Probation and Parole. In his complaint, Rosa alleges that he was discharged from his position in state government based upon his race and in retaliation for his protesting an inappropriate sexual harassment program conducted in December of 2017 with the approval of the Secretary of Corrections. In the course of discovery, it is alleged that the justification for Rosa's termination was, in part, allegations that he had instructed staff to destroy certain documents. This allegations was investigated by Office of State Inspector General (OSIG) and it is reported that the OSIG concluded that the allegation was without merit.

Viewing the OSIG investigation as being potentially relevant to the issues in this lawsuit, and the question of whether these document destruction allegations were a valid reason for Rosa's termination or a pretextual excuse for some other motivation, the plaintiff issued a subpoena to the OSIG seeking information regarding this investigation. The instant discovery dispute involves this subpoena. With respect to this subpoena, the parties had a discussion regarding the scope of the subpoena, but it is now evident that this discussion did not lead to a genuine understanding since much of the parties' dispute regards what it is they agreed to do. As to this issue, however, it is conceded that the parties agreed as follows:

> The Plaintiff's subpoena was to be limited to the following matters:
>
> How OSIG was tasked to investigate a Pennsylvania Board of Probation and Parole (PBPP) Director in 2017 but not tasked to investigate the same Director in October 2017 for the same or related alleged misconduct;
>
> How the April 2017 "complaint" was made;
>
> The witnesses OSIG spoke to that confirmed the complaint was without merit;
>
> The substance (and veracity) of those witnesses' testimony; and
>
> How and when the results of the OSIG investigation were shared with DOC and/or PBPP (as well as other Commonwealth agencies).
>
> (Doc. 40 at 9).

Despite this discussion of the scope of the subpoena, at the time of the deposition of the subpoenaed witness, counsel promptly found themselves embroiled in

2

disagreements, disputes which inspired this motions to compel. (Doc. 38). The motion is fully briefed and we have instructed the OSIG to provide us with their modest investigative file for *in camera* review. Having considered this matter, and reviewed these materials, the motion to compel will be granted, in part.

II.     **Discussion**

Several basic guiding principles inform our resolution of this discovery dispute which, in essence, seeks to enforce a subpoena issued by the plaintiff. At the outset, "Rule 45 of the Federal Rules of Civil Procedure establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed. R. Civ. P. 45. A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).'" First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (quoting OMS Invs., Inc. v. Lebanon Seaboard Corp., No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)). Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. In this regard, it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. R.J. Reynolds Tobacco v. Philip Morris Inc, 29 F. App'x 880, 881 (3d Cir. 2002). This far-reaching discretion extends to decisions regarding how to

3

enforce compliance with subpoenas, where "[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." Coleman-Hill v. Governor Mifflin School Dist., 271 F.R.D. 549, 552 (E.D. Pa. 2010) (quoting Guinan v. A.I. duPont Hosp. for Children, No. 08–228, 2008 WL 938874, at *1 (E.D. Pa. Apr. 7, 2008); Marroquin–Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983)) (internal quotations omitted).

This broad discretion, however, is guided by certain general principles. At the outset, when considering a motion to quash or modify a subpoena, we are enjoined to keep in mind that the reach of a subpoena is defined by the proper scope of discovery in civil litigation. Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D. Pa. Dec. 4, 1998). The scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26. Therefore, valid claims of relevance, privilege, and proportionality cabin and restrict the court's discretion in ruling on discovery issues. Moreover, in ruling upon objections to a subpoena, "this court is required to apply the balancing standards—relevance, need, confidentiality, and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002). The court's evaluation of a motion to quash a Rule 45 subpoena is also governed by shifting burdens of proof and persuasion. Accordingly, "the subpoenaing party bears the initial burden to establish the relevance of the material sought, and then the burden shifts to the subpoenaed party to demonstrate that the subpoena seeks privileged or otherwise protected material under Rule 45." L.W. v. Lackawanna Cty., Pa., No. 3:14-CV-1610, 2015 WL 1499865, at *1 (M.D. Pa. Apr. 1, 2015) (citing In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234 (E.D. Pa. 2014)).

Further, when considering agency investigative records, like the records of the OSIG, we are also cautioned that we must examine:

> [T]he extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs' case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

Rosa-Diaz v. Harry, No. 1:17-CV-2215, 2018 WL 6322967, at *3 (M.D. Pa. Dec. 4, 2018). Finally, case law construing OSIG claims of privilege in the context of third-party subpoenas for investigative records has consistently noted that Pennsylvania law disfavors assertions of privilege; that any investigative, executive or deliberative privilege is to be narrowly construed; and that the privilege typically does not embrace simple factual reports. See Van Hine v. Dep't of State of Com., 856 A.2d 204, 210 (Pa. Commw. Ct. 2004).

Guided by these principles, we find that the subpoena to the OSIG seeks information that is relevant to the claims and defenses in this case since the OSIG investigation may either support, or refute, any argument that Rosa's discharge was justified based upon workplace misconduct.

Finding that this information is relevant to the issues raised in this case, and further concluding that the claims of investigative or deliberative privilege should be narrowly tailored to protect deliberative processes "but not simple factual reports and summaries," Van Hine 856 A.2d at 210, we have examined the OSIG *in camera* submission and conclude as follows:

First, as to Documents 10 through 20 listed in the OSIG privilege log, there is no claim of privilege. Instead, the documents were withheld on relevance grounds. While we find that these documents, which consist primarily of public records, have limited relevance, we believe that there is a sufficient showing of relevance to warrant disclosure of these documents. Therefore, these documents should be produced.

Second, as to Documents 21 through 23, it is represented that these records are in the plaintiff's possession or have been produced in an unredacted form. Accordingly, no further action is required with respect to these records.

As for the remaining items identified in the OSIG privilege log, we find that additional disclosures of these records are necessary. We reach this conclusion based upon our determination that the documents have potential relevance to the issues in this lawsuit. We are also guided by the fact that many of these records relate to "simple factual reports and summaries." Van Hine 856 A.2d at 210. Finally, we find

it difficult to reconcile the withholding of these records with the apparent concession by the OSIG that the plaintiff was entitled to information concerning:

> How OSIG was tasked to investigate a Pennsylvania Board of Probation and Parole (PBPP) Director in 2017 but not tasked to investigate the same Director in October 2017 for the same or related alleged misconduct;
>
> How the April 2017 "complaint" was made;
>
> The witnesses OSIG spoke to that confirmed the complaint was without merit;
>
> The substance (and veracity) of those witnesses testimony; and
>
> How and when the results of the OSIG investigation were shared with DOC and/or PBPP (as well as other Commonwealth agencies).

(Doc. 40 at 9).

Given these concessions by the OSIG, it is difficult to understand how the agency can now justify the wholesale withholding of reports of interview which contain factual reports or summaries. Likewise, in light of the agreement reached by the OSIG, it seems that communications identifying how the investigation began and what agencies received results of the investigation are appropriate subjects of inquiry. Further, while the OSIG cites whistleblower confidentiality provisions of state law in declining to identify the complainant or witnesses, we are unable to reconcile this objection with the agency's prior agreement that the plaintiff was entitled to information concerning the witnesses OSIG spoke to who confirmed that this complaint against Rosa was without merit. We also note that at least one of the

8

*in camera* documents, Document 5, seems to indicate that the complainant waived confidentiality to some degree.

While these concessions by OSIG may be viewed as a waiver of objections, we recognize that this apparent concession by OSIG may not fully protect the third-party privacy interests of the complainant and interviewed witnesses. Therefore, we will adopt the following course: Documents 1 through 5 and 7 through 9 shall be produced with the names of the witnesses and complainants redacted. If upon review, the plaintiff seeks disclosure of the identities of these witnesses or complainant, then OSIG will provide these individuals with notice of this demand so they may lodge any objections based upon their state law privacy interests that were not waived by the OSIG. OSIG will also produce Document 6 in its entirety.

Finally, if upon review of these documents the plaintiff seeks to further depose an OSIG representative, that deposition will be limited to the areas agreed to by the parties, testimony regarding factual matters revealed in the investigation, and will not entail any deliberative processes.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUIS ROSA,** | : | Civil No. 1:19-CV-1452 |
| | : | |
| **Plaintiff** | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA,** | : : | |
| | : | |
| **Defendants** | : | |

# ORDER

AND NOW, this 22nd day of April, 2021, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the plaintiff's Motion to Compel is GRANTED in part as follows:

First, as to Documents 10 through 20 listed in the OSIG privilege log, there is no claim of privilege. Instead, the documents were withheld on relevance grounds. While we find that these documents, which consist primarily of public records, have limited relevance, we believe that there is a sufficient showing of relevance to warrant disclosure of these documents. Therefore IT IS ORDERED that these documents be produced.

Second, Documents 1 through 5 and 7 through 9 shall be produced with the names of the witnesses and complainants redacted. If, upon review, the plaintiff

10

seeks disclosure of the identities of these witnesses or complainant, then OSIG will provide these individuals with notice of this demand so they may lodge any objections based upon their state law privacy interests that were not waived by the OSIG.

Third, OSIG will also produce Document 6 in its entirety.

Finally, if upon review of these documents the plaintiff seeks to further depose an OSIG representative, that deposition will be limited to the areas agreed to by the parties, testimony regarding factual matters revealed in the investigation, and will not entail any deliberative processes.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge